### H. G. VOGEL CO. v. STANDARD CORDAGE CO.

(Supreme Court, Special Term, Kings County. December, 1908.)

1. CONTRACTS (§ 301*)—DELAY IN WORK—DAMAGES—CONTRIBUTING TO DELAY.
   The agreement for damages to be paid defendant in case of delay of plaintiff's part of the work being conditioned expressly on "the understanding that" defendant has "not contributed to this delay in any way," defendant, having contributed substantially to the delay, is not entitled to recover on account thereof, though plaintiff also contributed thereto.

   [Ed. Note.—For other cases, see Contracts, Dec. Dig. § 301.*]

**2. CONTRACTS (§ 232*)—BUILDING CONTRACTS—EXTRAS.**

Plaintiff, who contracted to do certain portion of the work shown by a plan to secure a reduction in insurance rates on a building, is entitled to recover extra for items of work arising out of a situation not contemplated in the plan and specifications, but the necessity for which developed as the work progressed.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1071–1097; Dec. Dig. § 232.*]

**3. PRINCIPAL AND AGENT (§ 101*)—AGENCY.**

Plaintiff contracted to do part of the work of installing a sprinkler system in defendant's factory; the purpose of the work being to secure a reduction of the insurance rates, which could only be secured with the approval of an insurance exchange. Before the contract was made the insurance exchange made a plan of recommendations, which was concededly general, and not intended to be definite as to details. The contract provided for payment to plaintiff of a certain sum "based on the installation of 455 sprinklers; should more or less * * * be required, they will be charged for or credited at $290 each." At the direction of the insurance exchange plaintiff installed many more than 455 sprinklers; defendant being chargeable with notice of such direction and the work done pursuant thereto. · *Held* that, the insurance exchange being placed in an absolute dominant position over the work to be done, its direction must be deemed that of an agent of defendant pro hac vice.

[Ed. Note.—For other cases, see Principal and Agent, Dec. Dig. § 101.*]

Action by the H. G. Vogel Company against the Standard Cordage Company. Judgment for plaintiff.

David Bernstein, for plaintiff.
Alfred S. Brown, for defendant.

CARR, J. The defendant owned a large factory plant in the borough of Brooklyn. In order to secure a reduction of the insurance rates on its property, it made an application to the New York Fire Insurance Exchange, which represented the various insurance companies, for the formulation of a plan, suitable to the exchange, for the introduction of a sprinkler system on the property in question. The exchange formulated such a plan and in addition made certain specifications of "recommendations" as to the work to be done. The plaintiff was in the business of installing sprinkler systems; and on December 20, 1906, the parties to this action entered into a written contract whereby each of them bound themselves to do certain portions of the work shown by the plan aforesaid. The express object of the work was to secure the approval of the exchange, in order that the rates of insurance should be lowered. The agreed price for the part of the work to be done by the plaintiff was $13,770, "based upon the installation of 455 sprinklers; should more or less than the said number of sprinklers be required, they will be charged or credited at $290 each" (contract). It was further provided as follows:

"That in the event of delay by the H. G. Vogel Company in the completion of their work beyond May 1, 1907, the Standard Cordage Company are caused additional expense by reason of the H. G. Vogel Company not having secured the approval of the New York Fire Insurance Exchange covering their work, and with the understanding that the Standard Cordage Company, have not contributed to their delay in any way, the H. G. Vogel Company shall

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes.

bear such expense as a bonus; and in consideration of this bonus the Standard Cordage Company shall, in the event of the H. G. Vogel Company completing its work prior to May·1, 1907, pay to the H. G. Vogel Company the difference in the insurance rate that would have accrued to the Standard Cordage Company, had they completed their part of the work and thereby permitted the securing of the approval of the New York Fire Insurance Exchange, covering the equipment contemplated. It is understood and agreed, however, that this clause is subject to the conditions set forth in the foregoing. The intent of the above is that, should the Standard Cordage Company secure a reduction of the insurance company rate on account of the work being done prior to May 1, 1907, they are to pay the same to the H. G. Vogel Company."

The work started thereafter in February or March, 1907, but the approval of the New York Fire Insurance Exchange was not secured until October, 1907, and the defendant's insurance rates were reduced as of August 31, 1907. Neither party to the agreement had completed its share of the work by May 1, 1907, but each continued on until the following October. The responsibility for this delay is not admitted by either party; each seeking to shoulder it on the other, and the defendant seeking damages therefor by its counterclaim to the extent of $3,000.

It is apparent on the face of the testimony that the defendant, itself had not done its share of the work in many substantial particulars by May 1, 1907, nor for a considerable time thereafter. Much of their delayed work could have been done independently of the progress of the plaintiff's share of the work. Again, the work in question in the clause of the agreement quoted was the work outlined on the plan and in the specifications of the Fire Insurance Exchange, and it is unquestionable that many important modifications of said work had to be done during its progress, without any fault of the plaintiff necessitating further time for the completion of the entire work and the securing of the approval of the Fire Insurance Exchange. The exact amount of delay caused by each party to this action might be difficult to determine, yet the parties themselves, evidently foreseeing the possibility of their complication, provided for it in advance; for the agreement for damages for delay is conditioned expressly upon "the understanding that the Standard Cordage Company have not contributed to this delay in any way." In view of the evident fact the defendant did contribute to the delay, and substantially so, the agreement must control, and the court is relieved from an almost impossible task of balancing the contribution of each party. The defendant's counterclaim is therefore disallowed.

As to the plaintiff's claim for extra work in the amount of $905.80, there is no controversy in the evidence either as to the items or value. The defendant's contention on this head seems to be that, although these items were not specified in the agreement between the plaintiff and itself, they were necessary to be done to make the job secure the approval of the Fire Insurance Exchange, and therefore necessarily involved in the general work to be done by the plaintiff for fixed price of the contract. All of the items arose out of a situation not contemplated in the plan and specifications of the Fire Insurance Exchange, their necessity developing as the work progressed; and they were truly extra work, unless the contract between the parties is to be given an.

elasticity far beyond the reasonable intent of the parties at the time of the making. This court can see no justification for such construction, and therefore allows the plaintiff's claim.

The serious controversy between the parties arises out of the plaintiff's claim for additional sprinklers. The contract was based on the use of 455 new sprinklers; but that more or less might be required was contemplated. The plaintiff claims that 1,839 additional sprinklers were in fact required and furnished. The defendant now denies that any additional sprinklers were required, although in its letter to the plaintiff of November 29, 1907, it admitted that 720 additional sprinklers were furnished and required. From the testimony in the case it would appear that at least 1,119 additional sprinklers were furnished by the plaintiff, as is admitted by defendant's superintendent, Scott. The plaintiff's proof shows that 1,248 additional sprinklers were furnished, and parts of 591 sprinklers furnished in which old sprinkler heads were reused. The practical difference between the parties resolves itself into a question of 129 sprinklers, as to which the parties cannot agree. If the plaintiff can recover for these additional sprinklers, the court sees no reason to doubt the count given by the plaintiff.

The sprinklers additional to the number specified in the contract might be required to complete the contract, which fixes the rate at which they are to be charged. Yet at the trial, and now in briefs of the respective counsel, the court's attention is not called to any indication in the specifications or plans as to the number of these articles to be furnished. This matter was left open intentionally for determination as the work progressed. The purpose of the work itself was to secure a reduction of the defendant's insurance rates through the approval of the New York Fire Insurance Exchange. Without this approval, the avowed purpose would fail of result. Therefore the number of sprinklers to be required depended on the position to be taken by that body. Its plan of recommendations, made before the contract between the parties to this action, was concededly but a "layout," and not intended to be definite as to details. The plaintiff claims that all these additional sprinklers were installed under the orders of the New York Fire Insurance Exchange, and that the defendant's agents knew of such orders, and permitted such installations, and agreed to pay for the same; while the defendant now contends that it did not become obligated to pay for any additional sprinklers to the number estimated in the contract. This position is not ingenuous, in view of its former admission of liability as to 720 sprinklers over and above the contract estimate (letter of November 29, 1907).

There is no doubt in my mind that the New York Fire Insurance Exchange directed the installation of all the additional sprinklers, and that the defendant is chargeable with knowledge of such direction and the work done in pursuance thereof. The cause of this direction may have been the insufficiency of the defendant's water main system, as the plaintiff contends, or it may not have been, as the defendant contends. The direction practically stands beyond controversy. In view of the peculiar nature of the contract between the parties, by which the New York Fire Insurance Exchange was placed in an absolutely dominant

position over the work to be done, I am of the opinion that its directions must be deemed to have been those of an agent of the defendant pro hac vice.

Judgment is directed for the plaintiff for the full amount of the claim, with costs. Settle findings on notice.